IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **Claude Williams and Glennie Williams** ) | |
| **Individually and on behalf of all** ) | |
| **similarly situated individuals,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CASE NUMBER: 1:07-cv-879** |
| ) | |
| **Richmond Title Services, LP** ) | **Class Action** |
| ) | |
| **Defendants.** ) | **Jury Trial Demande**d |

## CLASS ACTION COMPLAINT

NOW COMES the Plaintiffs and as Complaint against the above-named Defendants aver as follows:

## SUMMARY OF CLAIMS

1. These claims arise from a real estate loan transaction resulting in mortgage upon Plaintiffs' home in Bay Minette, Alabama. Specifically, Plaintiffs' claims against Defendants Richmond Title Services, LLP (Richmond) and Transnation Title Insurance Company (Transnation) for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, in connection with the "title charges" title insurance fees and recording fees imposed on Plaintiffs in connection with this loan. Plaintiffs assert their claims individually and on behalf of a class of similarly situated individuals.

## I. INTRODUCTION

2. This action is brought on behalf of residential mortgage borrowers who have received settlement services from Richmond in connection with the closing of their loans. In connection with these closings Plaintiffs and the class members were charged and paid fees for certain settlement services. These services were provided as a condition to a federally related

home loan. Richmond is in the business of providing settlement services as that term is defined by 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(b).

3. Defendants have engaged in a uniform, systematic pattern and practice of charging borrowers excessive and unearned fees for settlement services in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq.

4. Under RESPA, related regulations, policy statements and other pronouncements by the Department of Housing and Urban Development (HUD), fees for settlement services are unearned when:

> one settlement service provider marks up the cost of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.
>
> HUD Statement of Policy 2001-1, Part C, § (8)(b), Unearned Fees (24 C.F.R. Part 3500) ("HUD Statement of Policy 2001-1 ").

5. HUD further clarified its position regarding the mark up of settlement services on its website at, http://www.hud.gov/offices/hsg/sfh/res/resindus.cfm, where it states:

Fee splitting

24. Can a lender charge a borrower a fee for sending documents via courier and disclose it on the HUD-1 where in fact the borrower stops by the lender's office and picks up the documents instead?

No, because the charge for the courier service does not represent a charge for work actually performed which can be imposed on the borrower.

25. Can a lender collect from the borrower an appraisal fee of $200, listing the fee as such on the HUD-1, yet pay an independent appraiser $175 and collect the

$25 difference?

No, the lender may only collect $175 as the actual charge. It is a violation of Section 8 (b) for any person to accept a split of a fee where services are not performed.

6. In spite of HUD's guidance, which could not be clearer, Richmond has closed hundreds of loans and on information and belief all or substantially all of these transactions included unlawful, excessive and unearned fees for settlement services and/or filing fees. Accordingly, Plaintiffs is pursuing this case as a class action.

## II. THE PARTIES

7. Plaintiffs, reside at 42186 Nicholsville Rd., Bay Minette, Alabama 36507.

8. Richmond Settlement Services, LP., (Richmond) is a Texas corporation that engages in the closing of mortgage loan transactions throughout Alabama and the Southeast.

9. Transnation Title Insurance Company (Transnation) is a subsidiary of LandAmerica Financial Group which is headquartered in New Jersey.

10. Plaintiffs' claims are asserted with respect to alleged violations by Richmond, Transnation and/or any of their agents, predecessors, subsidiaries, divisions and entities for which they have liability.

## III. JURISDICTION AND VENUE

11. Plaintiffs seek relief under RESPA and, therefore, federal question jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

12. Personal jurisdiction and venue in this district are proper under 28 U.S.C. §§1381(b) and 2614, because a substantial part of the events or omissions giving rise to the

Plaintiffs' claims occurred in this district, in that the real property involved in Plaintiffs' mortgage loan transaction is located in this district.

## IV. **BACKGROUND**

RESPA - AN OVERVIEW

13. In the early 1970's, Congress became concerned about predatory lending practices in the housing industry, and in 1974 enacted a remedial consumer protection statue, RESPA, "to ensure that consumers throughout the Nation are . . . protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

14. As Congress has indicated, the purpose of RESPA is, inter alia, "to effect certain changes in the settlement process for residential real estate that will result . . . in the elimination of . . . fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(a) and (b).

15. Congress' desire to eliminate excessive settlement fees is manifested in Section 8 of RESPA, which prohibits kickbacks and fee-splits related to real estate settlement services as follows:

> § 2607 Prohibition Against Kickbacks and Unearned Fees
>
> a) Business Referrals. No person shall give and no person shall accept any fee, kickback or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
> b) Splitting Charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

16. The United States Department of Housing and Urban Development ("HUD") has issued implementing regulations for RESPA which define "settlement service" as "any service provided in connection with a prospective or actual settlement[.]" 24 C.F.R. Part 3500.2.

RICHMOND'S and TRANSNATION'S VIOLATIONS OF RESPA

17. The acts of Richmond and Transnation complained of herein were either intentional or occurred through the negligent supervision of their agents and employees.

18. As part of the closing and settlement process for a residential mortgage loan, Richmond is requested by the lenders as a matter of course to perform certain settlement services, including the writing of title insurance, with respect to each borrower.

19. Richmond as a matter of course obtains settlement services from third party providers and is an agent for Transnation Title Insurance Company.

20. RESPA and related regulations require the use of a uniform settlement statement known as the HUD-1 or HUD-1A.

21. On the HUD-1 settlement statement, Richmond is required by RESPA and related regulations to itemize charges to the borrowers for these settlement services.

22. In the instant transaction and those of putative class members Richmond was fully compensated for all the services it performed or arranged by the "settlement or closing fee" it charges and discloses on the settlement statements.

23. Additionally, Transnation was fully compensated in each transaction by the legal rate it receives for the title insurance it underwrites.

24. The charges, including the charges for title insurance, shown on the HUD-1 and paid by the borrowers are inflated, duplicative and/or marked up by Richmond which retains the difference in charges as unearned fees.

25. Richmond adds additional amounts to the fees of other settlement service providers without performing any additional compensable work for said additional fees.

26. These settlement services are provided to Richmond by third party providers and Richmond does not perform any additional services related to such settlement services obtained and, accordingly, the additional fees being charged by Richmond for said services are for "other than for services actually performed."

27. With regard to title insurance Richmond charges fees in addition to the applicable legal title insurance rates and on information and belief splits these padded fees with Transnation.

28. Hence, Richmond and Transnation charged Plaintiffs and the Class excessive and unearned fees for settlement services.

29. Richmond's and Transnation's acceptance of excessive and unearned fees from consumers is in direct violation of RESPA and, depending upon the precise payment arrangements between Richmond, Transnation and other third party providers, Richmond's and Transnation's conduct represents either an illegal "markup/fee split" or an illegal "kickback" under RESPA. Plaintiffs, accordingly, plead in the alternative.

PADDED RECORDING FEES

30. As part of the closing and settlement process for a residential mortgage loan Richmond, as a matter of course, inflates the recording fees charged to its customers and retains the difference between the actual fees charges by recording officials as additional unearned fees.

31. In the instant transaction the actual recording fee charged by the Baldwin County probate office was $58.00, while plaintiffs were charged $130.00 by Richmond.

32. Richmond performs no additional work or compensable service for the marked-up recording fee.

33. In fact Richmond charges a "settlement or closing fee" which fully compensates it for its work with regard to each closing that it does.

34. The Settlement or closing fee charged the plaintiffs and class members herein fully compensated Richmond for each and every service that it performed and/or arraigned regarding the named plaintiffs' and class members' loans.

35. Recording fees are often indicated on the HUD-1 Statements to be paid to "clerk of the court." On information and belief this fee is "split" between Richmond and the appropriate governmental authority in charge and responsible for the recordation of the Plaintiffs' mortgage and those of class members. The portion of the fee retained by Richmond an improper markup or is a kick back made in connection with the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

36. Richmond's acceptance of and concealment of excessive and unearned fees from its customers for the recordation of their mortgages is in direct violation of RESPA and, depending on the precise payment arrangements between Richmond and the governmental authorities represents either an illegal markup/fee split or an illegal kick back under RESPA. Plaintiffs, accordingly plead in the alternative.

PADDED ABSTRACT AND OTHER FEES

37. Richmond charges unearned fees for other settlement services in connection with class members loans.

38. For example Richmond, on information and belief, hires third parties to perform title searches and render title reports at a price of less than $100.00. Then, without performing any additional compensable work, it routinely charges fees for "title examination" and "Abstract or title search" that exceed the third parties' charges for the rendering of the title reports.

39. In the named plaintiffs' transaction Richmond changed a total of $245.00 for title examination and title search when a third party actually performed these services for, on information and belief, less than $100.00.

40. Richmond regularly charges other padded fees including fees for:

"Notary Fees";

"Overnight delivery";

"Tax Service"; and

"Wire fee."

41. Plaintiffs were charged $175, $85, $59 and $10 respectively for these "services" which were, on information and belief performed, by third parties at a much lesser price.

42. Richmond added additional amounts to these fees with out performing any additional work in exchange for the mark-up.

PADDED TITLE INSURANCE FEES

43. Plaintiffs and class members were also charged inflated amounts for title insurance. On line 1108 of the HUD-1 their settlement the Williams were charged $236.00 for "lender's coverage." The legal rate for this coverage was $2.25 per each $1,000 of coverage or $211.50.

44. The title insurance herein was issued through defendant Transnation Title Insurance Company.

45. Title insurance Rates are regulated by the State of Alabama and by regulatory authorities in other states.

46. The approved filed rates for Transnation in Alabama and other states provide there will be no charge for "Standard Residential Endorsements."

47. In addition to the $236 charge the Williams were charged $35 for "ATLA9 Covenants, Restrictions and Miner" and $35 for "ALTA8.1 Environmental Protection to Ric." These charges appear on lines 1113 and 1114 respectively on their settlement statement.

48. The ALTA8.1 and ALTA9 are "Standard Residential Endorsements"; therefore Plaintiffs could not be legally charged for said endorsements.

49. The legal charge of $211.50 fully compensated Richmond and Transnation issuing and underwriting the title policy including the endorsements. The legal rate says that the endorsements are included. (See exhibit "A" paragraph 15.)

50. The charge for the endorsements is unearned and duplicative because the endorsements were already included in the legal rate. In other words Plaintiffs had already paid for the endorsements when they paid the base title insurance rate and in spite of that fact they were charged another $70.00.

51. All charges above the $211.50 were charged in addition to the legal rate and constitute charges for "other than services actually performed." In other words, the Williams were charged a total of $306 for title insurance ($236 + $35 + 35 = $306) representing an illegal charge of $94.50. There was no compensable work or service performed by Richmond or Transnation for the $94.50.

52. On information and belief this unearned $94.50 was split between Richmond and Transnation.

53. Richmond and Transnation have routinely charged and split additional amounts over and above the applicable rates to putative class members without doing any additional compensable work or services. In other words Richmond and Transnation have split unearned fees paid to them by class members.

54. As set forth above, various settlement services were actually obtained from third party providers and the actual cost, including regulated cost of title insurance, was marked up and charged to Plaintiffs. Also the charges for recording fees were inflated and marked up. The higher charges imposed upon Plaintiffs by Richmond and Transnation represented mark-ups of the true cost for title insurance, services and recording fees and provided excess and illegal profits to Richmond and Transnation.

## V. CLASS ACTION ALLEGATIONS

55. This is a class action filed on behalf of all residential borrowers, nationally, who received settlement services from Richmond and/or title insurance from Transnation (including their predecessors, subsidiaries, divisions, and entities for which Richmond and/or Transnation have liability). Upon information and belief, the scope of this class definition, including its temporal scope, will be further refined after discovery of Defendants' books and records.

56. The identities of the class members are readily identifiable through computer and paper records, regularly maintained in Defendants' course of business.

57. The Class is so numerous as to make it impracticable to bring all members of the Class before the Court. It is believed, based upon representations in public records, that the Class includes many thousands of members. In some instances, such persons may be unaware that claims exist on their behalf. To the extent that Class members have knowledge of their claims,

their damages are in such amounts that when taken individually, they are too small to justify the expense of a separate lawsuit.

58.     The representative Plaintiffs' claims are typical of, if not identical to, the claims of the Class. Plaintiffs received settlement services from Richmond and/or title insurance from Transnation which included the same excessive and unearned fees imposed upon each and every Class member.

59.     The representative Plaintiffs will fairly and adequately represent the members of the Class and have no interests which are antagonistic to the claims of the Class. Each Plaintiff is aware that he cannot settle this action without Court approval. Each Plaintiff's interest in this action is antagonistic to the interests of Defendants, and each will vigorously pursue the claim of the Class.

60.     The representative Plaintiffs have retained counsel who are competent and experienced in consumer class action litigation, and have successfully represented consumers in other complex class actions. Counsel have agreed to handle this case on a contingent basis, with their compensation for professional services only as awarded by the Court.

61.     Common questions of law and fact impact the rights of each member of the Class and a common remedy by way of permissible damages and declaratory relief is sought for the Class.

62.     There are numerous and substantial questions of law and fact common to all members of the Class which will control in this litigation and which will predominate over any so-called individual issues. These common questions of law and fact include:

    a)  Did Richmond and Transnation mark-up the costs of settlement services without providing actual, necessary and distinct services;

b) Did Richmond and Transnation otherwise engage in a "fee split," in violation of RESPA;

c) Did Richmond and Transnation engage in a "kickback" scheme, resulting in excessive settlement charges to the Class, in violation of RESPA;

d) What measure of damages is appropriate; and

e) What declaratory or injunctive relief is appropriate?

63.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiffs and the class are identical and will require evidentiary proof of the same kind and application of the same law.

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiffs' claims is manageable. Unless a class is certified, Defendants will retain excessive and unearned fees improperly accepted from class members.

65.     Unless a class-wide injunction is issued, Defendants may continue to commit violations against residential mortgage borrowers.

66.     The representative Plaintiffs will seek to identify all class members through discovery as may be appropriate and will provide to the class such notice of this action as the Court may direct.

67.     Defendants is in sole possession of the information regarding the cost of the settlement services it was charging borrowers, and actively misled Plaintiffs and the class, by disseminating fraudulent HUD-1 settlement statements that were calculated to deceive Plaintiffs and the class regarding: 1) who was providing the services related to the abstracts and title

searches; 2) how the fee for those services was truly being allocated; 3) to whom payments for recordation of mortgages was being made; and 4) in what amounts.

68. The fact that the charges imposed on Plaintiffs for settlement services were marked up, was unknown to, and essentially unknowable by, Plaintiffs and the proposed class members because Defendants' costs for providing or obtaining the services were not available to or discoverable by Plaintiffs and the proposed class members, and Defendants actively deceived Plaintiffs and the class about whom was providing these services and the fact that borrowers who closed loans using Richmond Settlement Services, Inc. were being overcharged. The unknown and inherently unknowable nature of Defendants' unlawful charges did not give Plaintiffs any reason to inquire, investigate or discover Defendants' wrongdoing. As a practical reality, it was impossible for persons closing on residential loans to detect Defendants' unlawful violations.

69. Defendants' scheme and misconduct was, by design and in practice, inherently self-concealing. Defendants knew Plaintiffs and the proposed class members could not determine whether or not the fees they were charged were marked up or unreasonably high.

70. Plaintiffs and the proposed class members have acted with due diligence with respect to their rights. The facts that support Plaintiffs' causes of action were not knowable to Plaintiffs or proposed class members until shortly before the filing of the Complaint in this action.

71. Specifically, Plaintiffs reviewed all relevant loan documents and actively participated in all aspects of the loan transaction at issue but nonetheless did not discover, and could not reasonably have been expected to discover, that some of the information set forth in the HUD-1's relating to fees paid to the clerk of court and abstract or title search charges was false and misleading.

## EQUITABLE ESTOPPEL, EQUITABLE TOLLING AND CLASS ACTION TOLLING OF LIMITATIONS PERIOD

72. Defendants knowingly and actively misled the Plaintiffs and the Members of the Plaintiffs' Class from pursuing their claims by, among other things:

(a) Engaging in a scheme that was by its nature and design "self-concealing";

(b) Knowingly and actively mischaracterizing and misrepresenting, inter alia, actual amounts paid for abstracts, title search, title examinations, notary fees, title endorsement fees, title insurance and recording charges thereby materially misrepresenting these disclosures.

(c) Knowingly and actively misrepresenting the amounts charged for settlement services, recording fees and title insurance and who was receiving such payments.

Plaintiffs and class members exercised reasonable consumer diligence during their loan transactions and dealings with Defendants and in reviewing of their loan documentation, they could not have, nor have been reasonably expected to, uncover the true facts.

## COUNT I
## VIOLATIONS OF RESPA - SECTION 8(b)

73. Plaintiffs reallege the allegations of the relevant paragraphs above by reference as if set out here in full.

74. Plaintiffs' loan, as well as the loans of the class members, is a federally related mortgage loan within the meaning of RESPA.

75. Defendants violated RESPA, Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations and interpretations by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

76. HUD has interpreted Section 8(b) as prohibiting "unearned fees" when (among other things) "one settlement service provider marks up the costs of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge." HUD Statement of Policy 2002-1, 66 Fed. Reg. 53, 052, 53, 407-58 (Oct. 18, 2001) (the "Policy Statement").

77. Plaintiffs and other class members are persons "charged for the settlement service involved in the violation," and each such Plaintiffs and other class members are entitled to damages from Defendants "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(b)(d)(2), 12 U.S.C. § 2607(d)(2).

78. Plaintiffs and other proposed class members paid fees to Defendants under a mistake of fact resulting from Defendants' failure to disclose that their fees for settlement services were excessive and unearned, as set forth above.

## COUNT II

## VIOLATIONS OF RESPA - SECTION 8(a)

79. Plaintiffs reallege the allegations of the relevant paragraphs above by reference as if set out here in full.

80. Defendants violated RESPA, Section 8(a), 12 U.S.C. § 2607(a), and related federal regulations and interpretations by accepting and/or giving a fee, kickback, or thing of value in exchange for the referral of real estate settlement services.

81. Plaintiffs and other class members are persons "charged for the settlement service involved in the violation," and each such Plaintiffs and other class members are entitled to damages from Defendants "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(b)(d)(2), 12 U.S.C. § 2607(d)(2).

WHEREFORE, on all asserted causes of action against Defendants, Plaintiffs and the class respectfully request judgment against Defendants as follows:

A)  For an order certifying this action may be maintained as a class action, as above defined, under Fed.R.Civ.P. 23(a) and 23(b)(3);

B)  For an order appointing Plaintiffs as representatives of the class;

C)  For an order appointing the undersigned counsel as class counsel pursuant to Fed.R.Civ.P. 23;

D)  For an order directing that reasonable notice of the class action be provided to all members of the class at the appropriate time after discovery and dispositive motions have been resolved;

E)  For violating RESPA, an order and judgment finding that the Defendants are liable as a matter of law to each member of the class for treble damages;

F)  For declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

G)  For reasonable attorneys' fees as provided by law and statute;

H)  For pre-and-post judgment interest as provided by law in an amount according to proof at trial;

I)  For an award of costs and expenses incurred in this action; and

J)  For such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

/s/ Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR. (UNDEE6591)
James D. Patterson
Attorneys for Plaintiffs
Post Office Box 969
Fairhope, Alabama 36533

        Telephone:    (251)   990-5558
        Facsimile:     (251)   990-0626
        E-Mail:        epunderwood@alalaw.com

/s/ Kenneth J. Riemer
KENNETH J. RIEMER        (RIEMK8712)
Attorney for Plaintiffs
P.O. Box 1206
Mobile AL 36633
Telephone:    (251) 432-9212
Facsimile:     (251) 433-7172
E-mail:        kenneth.riemer@kenriemerlaw.com